```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ELECTRIC INSURANCE COMPANY and UNITED STATES LIABILITY INSURANCE COMPANY<br><br>          Plaintiffs,<br><br>     v.<br><br>ESTATE OF TEDDY MARCANTONIS by DINA MARCANTONIS a/k/a KONSTANDINA MARCANTONIS,<br><br>          Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-5076<br>          (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

BODELL, BOVE, GRACE & VAN HORN
By:  Louis A. Bove, Esq.
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, PA 19102
     Counsel for Plaintiff Electric Ins. Co.

PRUTTING & LOMBARDI
By:  George A. Prutting, Jr., Esq.
701 South White Horse Pike
Audubon, NJ 08106
     Counsel for Intervenor Plaintiff United States Liability
     Ins. Co.

CHANCE & MCCANN, L.L.C.
By: Robert D. Fischer, Esq.
201 W. Commerce Street
P.O. Box 278
Bridgeton, NJ 08302
     Counsel for Defendant

**IRENAS**, Senior District Judge:

    Plaintiffs Electric Insurance Company ("EIC") and United

States Liability Insurance Company ("USLI") seek a declaration of

1

no coverage under the insurance policies issued to Teddy Marcantonis ("Marcantonis").  Pending before the Court are EIC's and USLI's Motions for Summary Judgment.

**I.**

This declaratory judgment action arises out of events that occurred in the early morning hours of December 9, 2008 when Marcantonis drove to his former girlfriend's farm, broke through the front door of the residence with a sledgehammer, and, using both a handgun and shotgun, killed her lover, Joseph Martorana.  (EIC's 56.1 Stat. ¶¶ 8, 10.)[1]  Marcantonis then committed suicide by setting himself on fire in his car, which was parked in the bushes of his former girlfriend's farm.  (Id. ¶¶ 9, 14.)

EIC issued a homeowner's insurance policy (the "EIC Policy") to Marcantonis effective from July 19, 2008 through July 19, 2009.  (Id. ¶ 12.)  Pursuant to the EIC Policy, EIC has an obligation to defend the Marcantonis Estate for losses during the policy period caused by "occurrences" not otherwise excluded as an expected or intended injury.  (EIC Br. in Support at 12.)  The term "occurrence" is defined under the EIC policy as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" resulting in either bodily injury or property damage.  (Id. at 15.)

---

[1] References to "EIC's 56.1 Stat." are to EIC's statement of undisputed material facts submitted in support of its Motion.

USLI issued to Marcantonis personal umbrella excess liability coverage in the amount of $1,000,000 over and above the primary liability insurance policy provided by EIC (the "USLI Policy"), effective from July 19, 2008 through July 19, 2009. (USLI's 56.1 Stat. ¶¶ 18-19.)  Pursuant to the USLI Policy, USLI will pay damages for a "loss," defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions" resulting in bodily injury or property damage, not otherwise excluded as an expected or intended injury.[2]  (USLI Br. in Support Ex. A.)

Theresa Williamson, Executrix of the Estate of Joseph Martorana, filed a wrongful death and survivorship action against the Estate of Teddy Marcantonis in New Jersey state court, Cumberland County, on July 28, 2009 (the "Martorana Litigation").[3]  (EIC's 56.1 Stat. ¶ 1.)  EIC reserved its rights under the policy and agreed to reimburse costs incurred by

---

[2] Regarding the duty to defend, the USLI Policy provides: "We are not, however, obligated to defend any claim or suit which is covered in whole or in part by other insurance available to you, whether or not designated as primary, excess or contingent." (USLI Br. in Support Ex. A at 2 of 5.)  The USLI Policy further provides that it will defend a suit against the insured when such suit is "not covered by any other policy...."  (Id.)

[3] The Martorana Complaint asserts that the shooting was intentional or alternatively that it was the "result of the reckless, negligent and careless assault" by Marcantonis.  (EIC's Cert. at Ex. A.)  The alternative negligence claim is based on the possibility that Marcantonis consumed "some yet unknown and yet undisclosed amount of medication and/or drugs and/or alcohol and/or mind altering substance...."  (Id. at Second Count ¶ 2.)

counsel for the Marcantonis Estate in defending the Martorana Litigation while also pursuing a declaratory judgment action regarding its rights and obligations under the EIC Policy. (Id. ¶¶ 4-5.)

On October 2, 2009, EIC filed the instant action seeking a declaration that it has no duty to defend or indemnify the Marcantonis Estate and reimbursement of all costs and expenses paid in connection with the defense of the Martorana Litigation.

USLI disclaimed coverage under the USLI Policy for the Martorana Litigation in a letter dated December 11, 2009. (USLI's 56.1 Stat. ¶ 26.)  On March 9, 2010, USLI filed an Intervenor Complaint in this action seeking a declaration that it has no duty to defend or indemnify the Marcantonis Estate and that Defendant has no entitlement to the excess liability coverage in the USLI Policy.

EIC and USLI filed their Motions for Summary Judgment on October 8, 2010, and October 27, 2010, respectively.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

EIC and USLI seek a declaration of their rights and obligations under the insurance policies issued to Marcantonis with respect to the murder of Martorana. Although the EIC Policy covers "occurrences" and the USLI Policy covers "losses," both define these terms as "accidents" resulting in bodily harm.[4] Therefore, the precise issue before the Court is whether Marcantonis' acts in the early morning hours of December 9, 2008

---

[4] Both policies define "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." (Bove Cert. Ex. B; USLI Br. In Support Ex. A.) There is no dispute that Martorana sustained a bodily injury within the meaning of the policies.

constitute an accident within the meaning of the EIC and USLI Policies.

In construing insurance policies which limit coverage to accidents, New Jersey courts look to whether "the alleged wrongdoer intended or expected to cause an injury.  If not, then the resulting injury is 'accidental,' even if the act that caused the injury was intentional." *Voorhees v. Preferred Mutual Ins. Co.*, 128 N.J. 165, 183 (1992).  While this analysis often requires an inquiry into the actor's subjective intent, "[w]hen the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injury."  *Id.* at 184.  This "objective approach focuses on the likelihood that an injury will result from an actor's behavior rather than on the wrongdoer's subjective state of mind."  *Id.*

Defendant opposes the Summary Judgment Motions of both EIC and USLI, arguing that its psychiatric expert report creates a genuine issue of material fact regarding whether Marcantonis' acts were intentional.  Defendant's psychiatric expert, Dr. Schnaidman, concluded that Marcantonis was suffering from a significant psychiatric disorder which deprived him of the ability to govern his conduct in accordance with reason.[5]  Based

---

[5] Schnaidman's report specifically provides:
There is no doubt that Mr. Teddy Marcantonis suffered from a significant psychiatric disorder, for the

on the expert's "psychological autopsy," Defendant further argues that Marcantonis' acts were not intentional and therefore are covered under both policies as accidents.[6]

---

> simple reason that he expressed suicidal and homicidal ideation and intent to various individuals over several years prior to the actual shooting-suicide which ultimately resulted in the current legal matter. .... Had Mr. Marcantonis mentioned his plan to someone who had the capacity to transport him to a psychiatric emergency room on the date in question, he would undoubtedly have been hospitalized and the tragic events of December 8th to 9th of 2008 would not have occurred. Instead, appropriate psychiatric treatment would have prevented those events. Therefore, it is abundantly clear, based upon the current status of the field of psychiatry in conjunction with the documented events prior to Mr. Marcantonis's death, that at the time of the incident he was obviously suffering from the necessary derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason. Sadly, nobody in his circle of acquaintances either thought to get Mr. Marcantonis the psychiatric help he needed, or, if someone did try, he or she was unable to force Mr. Marcantonis toward the appropriate help, most likely because of the lack of insight that accompanies most serious psychiatric disorders and the grandiosity which is a component of these illnesses and makes the patient believe that he or she knows best even when he or she does not.
>
> There is simply no reasonable way that one could argue that Mr. Marcantonis's acts on the night of December 8th to 9th of 2008 were anything but the product of his abnormal mental state at that time. For anyone trained in psychiatry to suggest otherwise is simply a blatant disregard of the entire field of psychiatry.

(Fischer Cert. Ex. A at 9.)

[6] In support of this argument, Defendant cites *Ruvolo v. American Cas. Co.*, which held that

> if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with

7

EIC and USIL argue that Schnaidman's report is unsupported by factual evidence and therefore insufficient to defeat summary judgment. EIC and USIL further argue that the murder of Martorana is not an occurrence or a loss and therefore is excluded from coverage under both policies.

For the purposes of the instant Motions for Summary Judgment, the Court finds the expert report insufficient to create a genuine issue of material fact, as it is conclusory and unsupported by the record. Schnaidman points to no facts other than the murder itself to support her conclusion that Marcantonis suffered from a derangement of his intellect.[7] In fact, Schnaidman acknowledges that Marcanontis' medical records from his psychiatrist, psychologist, and physician evidence no history or symptoms of a serious psychiatric disorder.[8] (Fischer Cert.

---

      reason, and while in that condition acting on an irrational impulse he shot and killed [the victim], his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract.
39 N.J. 490, 498 (1963).

[7] Some of Marcantonis' acquaintances described him as "bi-polar," but, as Schnaidman acknowledges, they did so "without specifically understanding what the diagnosis meant or where he had acquired it." (Fischer Cert. Ex. A at 4.)

[8] Schnaidman attempts to discredit Marcantonis' psychologist who gave a diagnosis of Dysthymia, a mild form of depression, by claiming that this was not a true diagnosis and inferring that the psychologist was "utilizing a code which he knew was reimbursable." (Fischer Cert. Ex. A at 7.) This unsupported allegation is wholly unpersuasive.

Ex. A at 4.)  Marcantonis' last medical examination on August 28, 2008 was normal and he reported that he "never felt better." (EIC's 56.1 Stat. ¶ 36.)  Moreover, there is no indication that Marcantonis was suffering from a derangement of intellect immediately prior to the murder.  The evidence establishes that on the evening of the murder by all accounts Marcantonis appeared normal, spending time with his friends and daughter at the Neptune Diner, as was his custom.  (Id. ¶ 25.)  Furthermore, Schnaidman's conclusion is at odds with the undisputed circumstances of the murder, which was carefully planned and executed.[9]

The fact that Marcantonis committed murder and suicide alone is insufficient to support a conclusion that he had a serious psychiatric disorder that deprived him of the capacity to govern his conduct in accordance with reason.  *See Cumberland Mutual Fire Ins. Co. v. Dahl*, 362 N.J. Super. 91, 101 (App. Div. 2003),

---

[9] The day before the murder, Marcantonis purchased ammunition, a crow bar, a lighter, gas and kerosene containers, and gas and kerosene.  (EIC's 56.1 Stat. ¶ 24.)  He put a sledgehammer in the trunk of his car that he would later use to gain entrance to the residence.  (Id. ¶¶ 10, 24.)  He made sure that his daughter would not be at the residence that night.  (Id. ¶ 26.)  He drove to his former girlfriend's residence and parked his car in the bushes, hidden from view.  (Id. ¶ 9.)  After using the sledgehammer to gain entrance to the residence, he shot Martorana several times at close range with a handgun.  (Id. ¶¶ 8, 10, 13.)  Then, he picked up a shotgun and shot Martorana in the chest.  (Id. ¶¶ 8, 13.)  He then returned to his vehicle and, using the lighter, the gas and the kerosene, committed suicide.  (Id. ¶¶ 14, 29.)

9

*cert. denied*, 178 N.J. 250 (2003)(noting that most intentionally committed criminal conduct is done by actors whose judgment is clouded by some mental condition and holding that this alone does not deprive the actor of the ability to act intentionally). The record simply does not support Schnaidman's conclusion that Marcantonis was suffering from a serious psychological disorder, which deprived him of the ability to act in accordance with reason at the time of Martorana's murder.

Instead, the record in this case clearly establishes that Marcantonis carefully planned and carried out the murder of Martorana. *See supra* note 9. Because the Court finds that Marcantonis intended to kill Martorana, EIC and USIL are entitled to judgment as a matter of law.

This case presents a fact pattern similar to that in *Dahl*, in which the New Jersey Superior Court, Appellate Division, held that an insurance policy excluded coverage for a premeditated, carefully planned murder. 362 N.J. Super. at 101. In *Dahl*, an estranged husband shot and killed his wife's boyfriend and then committed suicide. *Id.* at 93. He planned the murder and made multiple threats to carry it out. *Id.* at 95. On the evening of the murder, he drove to his wife's home where she lived with her boyfriend and parked his car a block away. *Id.* He broke in the back door and shot the boyfriend with a gun he had borrowed from a friend and then shot himself. *Id.*

The *Dahl* court rejected the expert's conclusion that the insured was acting on an irrational impulse precipitated by mental illness as evidenced by the insured's diary entries and suicide note.  *Id.* at 99.  Rather, the court held that the carefully planned murder was intentional and therefore outside the scope of the insurance policy.[10]  *Id.* at 101.

Viewing the evidence in the light most favorable to Defendant, no reasonable fact-finder could conclude that Marcantonis did not intend or expect to cause an injury to Martorana.  Indeed, Marcantonis' acts in the early morning hours of December 9, 2008 were particularly reprehensible so as to support an intent to injure absent an inquiry into Marcantonis' subjective intent.[11]  *See Harleysville Ins. Cos. v. Garitta*, 170

---

[10] The Court finds unpersuasive Defendant's attempts to distinguish *Dahl*.  (*See* Def's Br. in Opp. at 14-15.)  It is immaterial that Dahl had a psychiatric evaluation 20 days prior to the incident, while Marcantonis was last seen by his physician three months prior, or that Dahl shot himself, while Marcantonis set himself on fire despite the availability of two guns.  In addition, the absence of an evidentiary hearing in this case does not justify a different result.

[11] In deposition testimony, Marcantonis' former girlfriend described the murder:
> We went to bed, we were asleep.  And at some point in time I woke up by Joe waking me up.  The way we would sleep, he would wrap his legs in my legs and we would sleep quietly.  He startled me by pulling away and jumping out of bed and running out the bedroom door.  I was half asleep and I started to hear popping sounds and Joe screaming.  Finally, I shook off the sleep, I woke up.  I ran out of the room and I saw Joe standing across the room covered in blood.  Mr. Marcantonis was firing a handgun at him a few feet away.  I called to

N.J. 223, 235 (2001)(holding that death was an inherently probable consequence of thrusting knife twice into victim's torso and presuming as a matter of law the intent to injure).

Marcantonis' acts were not accidents within the meaning of the EIC and USIL Policies.[12]  Therefore, EIC and USIL have no obligation to defend or indemnify Defendant in the Martorana Litigation and Defendant has no entitlement to the coverage in the insurance policies.[13]  Accordingly, summary judgment will be granted in favor of EIC and USIL.

---

>  Joe.  He came to me.  I put my arms around him and we went down on the floor.  At that point in time I turned to Mr. Marcantonis and he no longer had the handgun, he was holding a shotgun.  He aimed it at my face.  I saw his face.  I ran--I turned to run into the bedroom.  He threw the shotgun on the floor and ran out of the house.

(Gabriel Dep. at 24:8-25:9.)

[12]  Marcantonis' acts are also excluded from coverage under both policies as "expected or intended" losses.  (*See* EIC Br. in Support at 19-20; USIL Br. In Support at 12-14.)

[13]  In its Complaint and its September 29, 2009 Reservation of Rights letter, EIC asserted the right to reimbursement for defense costs paid in connection with the Martorana Litigation.  Defendant has not taken any position in its opposition papers with respect to that claim.  Therefore, to the extent that the Court grants summary judgment to EIC on the coverage issue, the Court will not grant summary judgment on the reimbursement issue until it is fully explored.  If EIC seeks to recover legal fees and costs, it should file an appropriate motion for summary judgment on the reimbursement issue within 30 days of this Opinion setting forth in detail the costs expended and the legal theory for recovery.  Response and Reply Briefs shall be filed in accordance with the Federal Rules.  EIC's failure to file any such motion will be deemed a voluntary dismissal and the case will be closed.

**IV.**

For the reasons stated above, EIC's and USIL's Motions for Summary Judgment will be granted. An appropriate Order accompanies this Opinion.

Dated: December 22, 2010

                                                          s/Joseph E. Irenas
                                          **JOSEPH E. IRENAS, S.U.S.D.J.**